1   NICOLA T. HANNA
    United States Attorney
2   LAWRENCE S. MIDDLETON
    Assistant United States Attorney
3   Chief, Criminal Division
    JOSEPH O. JOHNS (Cal. Bar No. 144524)
4   Assistant United States Attorney
    Chief, Environmental and Community Safety
5   Crimes Section
    MARK A. WILLIAMS (Cal. Bar No. 239351)
6   Assistant United States Attorney
    Deputy Chief, Environmental and Community
7   Safety Crimes Section
         1300 United States Courthouse
8        312 North Spring Street
         Los Angeles, California 90012
9        Telephone: (213) 894-3359
         E-mail:   mark.a.williams@usdoj.gov
10
    Attorneys for Plaintiff
11  UNITED STATES OF AMERICA

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14  UNITED STATES OF AMERICA,        NO. CR 19 00035-PA

15                Plaintiff,         PLEA AGREEMENT FOR DEFENDANT
                                     WILEY SANDERS TRUCK LINES INC.
16              v.

17  WILEY SANDERS TRUCK LINES INC.,

18                Defendant.

19

20

21       1.   This constitutes the binding plea agreement between

22  defendant WILEY SANDERS TRUCK LINES INC. ("defendant" or "Wiley

23  Sanders") and the United States Attorney's Office for the Central

24  District of California ("the USAO") in the above-captioned case.

25  This agreement is limited to the USAO and cannot bind any other

26  federal, state, local, or foreign prosecuting, enforcement,

27  administrative, or regulatory authorities.

28

                              1

RULE 11(c)(1)(C) AGREEMENT

2. Defendant understands that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Accordingly, defendant understands that, if the Court determines that it will not accept this agreement, absent a breach of this agreement by defendant prior to that determination and whether or not defendant elects to withdraw any guilty plea entered pursuant to this agreement, this agreement will, with the exception of paragraph 19 below, be rendered null and void and both defendant and the USAO will be relieved of their obligations under this agreement. Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 21 and 22 below, will control, with the result that defendant will not be able to withdraw any guilty plea entered pursuant to this agreement, the USAO will be relieved of all of its obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty pleas.

DEFENDANT'S OBLIGATIONS

3. Defendant agrees to:

    a)    Give up the right to indictment by a grand jury, and at the earliest opportunity requested by the USAO and provided by the Court appear and plead guilty to all counts in the three-count information, in the form attached to this agreement as Exhibit A or a substantially similar form, charging defendant with illegal transportation of hazardous materials, in violation of 49 U.S.C. § 5124(a), 49 C.F.R. § 173.24(b), and 18 U.S.C. § 2(b).

2

1    b)   Not contest facts agreed to in this agreement.

2    c)   Abide by all agreements regarding sentencing
3 contained in this agreement and affirmatively recommend to the court
4 that it impose sentence in accordance with paragraph 13 of this
5 agreement.

6    d)   Appear for all court appearances, obey all conditions
7 of any bond, and obey any other ongoing court order in this matter.

8    e)   Not commit any crime; however, offenses that would be
9 excluded for sentencing purposes under United States Sentencing
10 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are
11 not within the scope of this agreement.

12    f)   Be truthful at all times with Pretrial Services, the
13 United States Probation Office, and the Court.

14    g)   Pay the applicable special assessments at or before
15 the time of sentencing unless defendant lacks the ability to pay and
16 prior to sentencing submits a completed financial statement on a
17 form to be provided by the USAO.

18                    THE USAO'S OBLIGATIONS

19    4.   The USAO agrees to:

20    a)   Not contest facts agreed to in this agreement.

21    b)   Abide by all agreements regarding sentencing
22 contained in this agreement and affirmatively recommend to the court
23 that it impose sentence in accordance with paragraph 13 of this
24 agreement.

25    c)   Except for criminal tax violations (including
26 conspiracy to commit such violations chargeable under 18 U.S.C.
27 § 371), not further criminally prosecute defendant (and its parent
28 company), KW PLASTICS (and its partners), KW PLASTICS OF CALIFORNIA

3

1  (and its partners), SOUTHERN LEASING LLC (and its members), and
2  LUTREL TRUCKING INC., and/or any individuals currently employed by
3  defendant or the companies listed in this subparagraph on the date
4  this agreement is executed by defendant, for violations arising out
5  of defendant's conduct described in the attached agreed-to statement
6  of facts.  Defendant understands that the USAO is free to criminally
7  prosecute defendant (and its parent company), KW PLASTICS (and its
8  partners), KW PLASTICS OF CALIFORNIA (and its partners), SOUTHERN
9  LEASING LLC (and its members), and LUTREL TRUCKING INC., and/or any
10 current or former employees of defendant and/or those companies for
11 any other unlawful past conduct or any unlawful conduct that occurs
12 after the date of this agreement.  Defendant agrees that at the time
13 of sentencing the Court may consider any uncharged conduct in
14 determining the applicable Sentencing Guidelines range, the
15 propriety and extent of any departure from that range, and the
16 sentence to be imposed after consideration of the Sentencing
17 Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).
18                    CORPORATE AUTHORIZATION
19      5.   Defendant represents that it is authorized to enter into
20 this agreement.  On or before the change of plea hearing pursuant to
21 this agreement, defendant shall provide the USAO and the Court with
22 a notarized legal document certifying that defendant is authorized
23 to enter into and comply with all of the provisions of this
24 agreement.  Such legal document(s) shall designate a company
25 representative who is authorized to take the actions specified in
26 this agreement, and shall also state that all legal formalities for
27 such authorizations have been observed.
28

4

ORGANIZATIONAL CHANGES AND APPLICABILITY

6.   This agreement shall bind defendant, its successor
entities (if any), parent companies, and any other person or entity
that assumes the liabilities contained herein ("successors-in-
interest").  Defendant, or its successors-in-interest, if
applicable, shall provide the USAO and the United States Probation
Office for the Central District of California with immediate notice
of any name change, business reorganization, sale or purchase of
assets, divestiture of assets, or similar action impacting their
ability to pay the fine or affecting this agreement.  No change in
name, change in corporate or individual control, business
reorganization, change in ownership, merger, change of legal status,
sale or purchase of assets, or similar action shall alter
defendant's responsibilities under this agreement.  Defendant shall
not engage in any action to seek to avoid the obligations and
conditions set forth in this agreement.

NATURE OF THE OFFENSES

7.   Defendant understands that for defendant to be guilty of
the crime charged in counts one, two, and three of the three-count
information, that is, illegal transportation of hazardous materials,
in violation of 49 U.S.C. § 5124(a), 49 C.F.R. § 173.24(b), and 18
U.S.C. § 2(b), the following must be true: (1) defendant willfully
or recklessly transported or willfully caused to be transported; (2)
a hazardous material; (3) without packaging authorized for such
material.

PENALTIES

8.   Defendant understands that the statutory maximum sentence
that the Court can impose for each violation of 49 U.S.C. § 5124(a),

1   49 C.F.R. § 173.24(b), and 18 U.S.C. § 2(b), is: a five-year period
2   of probation; a fine of $500,000 or twice the gross gain or gross
3   loss resulting from the offense, whichever is greatest; and a
4   mandatory special assessment of $400.

5        9.   Defendant understands, therefore, that the total maximum
6   sentence for all offenses to which defendant is pleading guilty is:
7   a five-year period of probation; a fine of $1,500,000 or twice the
8   gross gain or gross loss resulting from the offenses, whichever is
9   greatest; and a mandatory special assessment of $1,200.

10              SUSPENSION, REVOCATION, AND DEBARMENT

11       10.  Defendant understands that if defendant holds any
12   regulatory licenses or permits, the convictions in this case may
13   result in the suspension or revocation of those licenses and
14   permits.  The USAO makes no representation or promise concerning
15   suspension or debarment of defendant from contracting with the
16   United States or with any office, agency, or department thereof.
17   Suspension and debarment of organizations convicted under various
18   federal environmental protection and criminal statutes is a
19   discretionary administrative action solely within the authority of
20   the federal contracting agencies.  Defendant understands that
21   unanticipated collateral consequences such as this will not serve as
22   grounds to withdraw defendant's guilty pleas.

23                   FACTUAL BASIS

24       11.  Defendant admits that defendant is, in fact, guilty of the
25   offenses to which defendant is agreeing to plead guilty.  Defendant
26   and the USAO agree to the statement of facts attached hereto as
27   Exhibit B and incorporated by reference herein, and agree that the
28   statement of facts is sufficient to support the pleas of guilty to

the charges described in this agreement as well as the sentence,
conditions of probation, fine, and restitution payments specified in
this agreement.  The attached statement of facts is not meant to be
a complete recitation of all facts relevant to the underlying
criminal conduct or all facts known to either party that relate to
that conduct.

SENTENCING AGREEMENT

12.  Defendant and the USAO agree and stipulate that, pursuant
to United States Sentencing Guidelines ("U.S.S.G.") §§ 8C2.1 and
8C2.10, the sentencing guidelines are not applicable in determining
the fine for an organization violating statutes relating to the
environment, but that all other sections of Chapter 8 of the
U.S.S.G. are applicable in this case, including the provisions
regarding probation and restitution.  Defendant understands that in
determining defendant's sentence, the Court is required to consider
the factors set forth in 18 U.S.C. § 3553(a), including the kinds of
sentence and sentencing range established under the Sentencing
Guidelines.

13.  Pursuant to U.S.S.G. §§ 8D1.1 and 8D1.2 and the factors
set forth in Title 18, United States Code, Section 3553(a),
including the nature and circumstances of the offenses and the
history and characteristics of the defendant, the need for the
sentence imposed to reflect the seriousness of the offenses, to
promote respect for the law, to provide just punishment for the
offenses, to afford adequate deterrence to criminal conduct, and to
protect the public from further crimes of the defendant, and the
need to provide restitution to victims of the offenses, the parties
agree that defendant shall be sentenced as follows:

1       a)    Probation: Defendant shall be sentenced to a term of

2 3 years' probation with conditions to be fixed by the Court.

3       b)    Criminal Fine: Defendant shall pay a total criminal

4 fine of $1,500,000.  The criminal fine shall be paid by certified

5 check or wire transfer to the Clerk of the United States District

6 Court for the Central District of California, and confirmation of

7 the completed wire transfer or certified check shall be provided to

8 the USAO, as follows: $500,000 within one year of the sentencing

9 hearing; and two separate payments of $500,000 each on or before the

10 second and third anniversaries of the sentencing hearing.

11       c)    Special Assessment: Defendant shall pay a total

12 special assessment of $1,200.

13       d)    Community Service Payment: Within thirty days of the

14 sentencing hearing, defendant shall pay a total of $1,500,000 in the

15 form of a community service payment to the ERAF fund established by

16 the Los Angeles County Department of Public Health, with proof of

17 payment provided to the USAO.  These funds will be used to support

18 residents in the communities impacted by the "Company 1," including

19 for the following types of activities, among other related things:

20 (1) verification testing, analysis, and assessment of soils and

21 exterior/interior dust following State cleanup of residential

22 properties; (2) assistance to residents in abating lead and lead-

23 paint hazards; (3) Los Angeles County public health and safety

24 outreach, including education and advocacy activities; and (4)

25 educational and learning disability assessment and intervention for

26 children who reside within communities impacted by "Company 1."  The

27 parties stipulate and agree that this community service payment is

28 not a donation and is not tax deductible.

8

WAIVER OF CONSTITUTIONAL RIGHTS

14.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a)   The right to persist in a plea of not guilty.

b)   The right to a speedy and public trial by jury.

c)   The right to be represented by counsel at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel at every other stage of the proceeding.

d)   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e)   The right to confront and cross-examine witnesses against defendant.

f)   The right to testify and to present evidence in opposition to the charge, including the right to compel the attendance of witnesses to testify.

g)   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF STATUTE OF LIMITATIONS

15.   Having been fully advised by defendant's attorney regarding application of the statute of limitations to the offenses to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the offenses to which defendant is pleading guilty because of the expiration of the statute of limitations for those offenses prior to the filing of the information alleging those offenses; and (b) any

1  defense, claim, or argument defendant could raise or assert that

2  prosecution of the offenses to which defendant is pleading guilty is

3  barred by the expiration of the applicable statute of limitations,

4  pre-indictment delay, or any speedy trial violation.

5  WAIVER OF APPEAL OF CONVICTIONS

6  16.  Defendant understands that, with the exception of an

7  appeal based on a claim that defendant's guilty pleas were

8  involuntary, by pleading guilty defendant is waiving and giving up

9  any right to appeal defendant's convictions on the offenses to which

10 defendant is pleading guilty.

11 LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

12 17.  Defendant agrees that, provided the Court imposes the

13 sentence specified in paragraph 13, defendant gives up the right to

14 appeal any portion of the sentence.

15 18.  The USAO agrees that, provided the Court imposes the

16 sentence specified in paragraph 13, the USAO gives up its right to

17 appeal any portion of the sentence.

18 RESULT OF WITHDRAWAL OF GUILTY PLEAS

19 19.  Defendant agrees that if, after entering the guilty pleas

20 pursuant to this agreement, defendant seeks to withdraw and succeeds

21 in withdrawing defendant's guilty pleas on any basis other than a

22 claim and finding that entry into this agreement was involuntary,

23 then: (a) the USAO will be relieved of all of its obligations under

24 this agreement; and (b) should the USAO choose to pursue any charge

25 or any civil, administrative, or regulatory action that was either

26 dismissed or not filed as a result of this agreement, then (i) any

27 applicable statute of limitations will be tolled between the date of

28 defendant's signing of this agreement and the filing commencing any

1 such action; and (ii) defendant waives and gives up all defenses
2 based on the statute of limitations, any claim of pre-indictment
3 delay, or any speedy trial claim with respect to any such action,
4 except to the extent that such defenses existed as of the date of
5 defendant's signing this agreement.

6 EFFECTIVE DATE OF AGREEMENT

7 　　　20. This agreement is effective upon signature and execution
8 of all required certifications by defendant, defendant's counsel,
9 and an Assistant United States Attorney.

10 BREACH OF AGREEMENT

11 　　　21. Defendant agrees that if defendant, at any time after the
12 signature of this agreement and execution of all required
13 certifications by defendant, defendant's counsel, and an Assistant
14 United States Attorney, knowingly violates or fails to perform any
15 of defendant's obligations under this agreement ("a breach"), the
16 USAO may declare this agreement breached. All of defendant's
17 obligations are material, a single breach of this agreement is
18 sufficient for the USAO to declare a breach, and defendant shall not
19 be deemed to have cured a breach without the express agreement of
20 the USAO in writing. If the USAO declares this agreement breached,
21 and the Court finds such a breach to have occurred, then: (a) if
22 defendant has previously entered guilty pleas pursuant to this
23 agreement, defendant will not be able to withdraw the guilty pleas,
24 (b) the USAO will be relieved of all its obligations under this
25 agreement, and (c) the Court's failure to follow any recommendation
26 or request regarding sentence set forth in this agreement will not
27 provide a basis for defendant to withdraw defendant's guilty pleas.

28

1    22.   Following the Court's finding of a knowing breach of this

2   agreement by defendant, should the USAO choose to pursue any charge

3   or any civil, administrative, or regulatory action that was either

4   dismissed or not filed as a result of this agreement, then:

5        a)   Defendant agrees that any applicable statute of

6   limitations is tolled between the date of defendant's signing of

7   this agreement and the filing commencing any such action.

8        b)   Defendant waives and gives up all defenses based on

9   the statute of limitations, any claim of pre-indictment delay, or

10   any speedy trial claim with respect to any such action, except to

11   the extent that such defenses existed as of the date of defendant's

12   signing this agreement.

13        c)   Defendant agrees that: (i) any statements made by

14   defendant, under oath, at the guilty plea hearing (if such a hearing

15   occurred prior to the breach); (ii) the agreed to factual basis

16   statement in this agreement; and (iii) any evidence derived from

17   such statements, shall be admissible against defendant in any such

18   action against defendant, and defendant waives and gives up any

19   claim under the United States Constitution, any statute, Rule 410 of

20   the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

21   Criminal Procedure, or any other federal rule, that the statements

22   or any evidence derived from the statements should be suppressed or

23   are inadmissible.

24                  COURT AND PROBATION OFFICE NOT PARTIES

25    23.   Defendant understands that the Court and the United States

26   Probation Office are not parties to this agreement and need not

27   accept any of the USAO's sentencing recommendations or the parties'

28   agreements to facts, sentencing factors, or the sentence.   Defendant

1 understands that the Court will determine the facts, sentencing

2 factors, and other considerations relevant to sentencing and will

3 decide for itself whether to accept and agree to be bound by this

4 agreement.

5     24.   Defendant understands that both defendant and the USAO are

6 free to: (a) supplement the facts by supplying relevant information

7 to the United States Probation Office and the Court, (b) correct any

8 and all factual misstatements relating to the Court's Sentencing

9 Guidelines calculations and determination of sentence, and (c) argue

10 on appeal and collateral review that the Court's Sentencing

11 Guidelines calculations and the sentence it chooses to impose are

12 not error, although each party agrees to maintain its view that the

13 calculations and sentence referenced in paragraph 13 are consistent

14 with the facts of this case.   While this paragraph permits both the

15 USAO and defendant to submit full and complete factual information

16 to the United States Probation Office and the Court, even if that

17 factual information may be viewed as inconsistent with the facts

18 agreed to in this agreement, this paragraph does not affect

19 defendant's and the USAO's obligations not to contest the facts

20 agreed to in this agreement.

21                   NO ADDITIONAL AGREEMENTS

22     25.   Defendant understands that, except as set forth herein and

23 in the parties' tolling agreements, there are no promises,

24 understandings, or agreements between the USAO and defendant or

25 defendant's attorney, and that no additional promise, understanding,

26 or agreement may be entered into unless in writing signed by all

27 parties or on the record in court.

28

13

1    PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        26.  The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF CALIFORNIA

7    
     NICOLA T. HANNA

8    United States Attorney

9

10                                              1/22/19

11   MARK A. WILLIAMS                    Date
     Assistant United States Attorney

12

13

14   _Grady A. Reeves_                   December 14th 2018

15   NAME: Grady A. Reeves               Date

16   TITLE: Corporate Counsel

17

18   Authorized Representative of
     Defendant

19   WILEY SANDERS TRUCK LINES INC.

20

21                                       DECEMBER 13, 2018

     JONATHAN R. BARR                    Date

22   THOMAS D. WARREN
     Attorneys for Defendant

23   WILEY SANDERS TRUCK LINES INC.

24

25

26

27

28

                        14

CERTIFICATION OF DEFENDANT

I have been authorized by defendant WILEY SANDERS TRUCK LINES INC. ("defendant") to enter into this agreement on behalf of defendant. I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with defendant's attorney. I understand the terms of this agreement, and I voluntarily agree to those terms on behalf of defendant. I have discussed the evidence with defendant's attorney, and defendant's attorney has advised me of defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me or to defendant other than those contained in this agreement. No one has threatened or forced me or defendant in any way to enter into this agreement. I am satisfied with the representation of defendant's attorney in this matter, and I am pleading guilty on behalf of defendant because defendant is guilty of the charge and wishes to take advantage of the promises set forth in this agreement, and not for any other reason.

NAME: Grady A. Reeves                          December 11th, 2018
                                                Date

TITLE: Corporate Counsel

Authorized Representative of
Defendant
WILEY SANDERS TRUCK LINES INC.

1       I am defendant WILEY SANDERS TRUCK LINES INC.'s attorney.  I

2  have carefully and thoroughly discussed every part of this agreement

3  with the authorized representative of my client.  Further, I have

4  fully advised my client of its rights, of possible pretrial motions

5  that might be filed, of possible defenses that might be asserted

6  either prior to or at trial, of the sentencing factors set forth in

7  18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions,

8  and of the consequences of entering into this agreement.  To my

9  knowledge: no promises, inducements, or representations of any kind

10  have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the factual basis

14  set forth in this agreement is sufficient to support my client's

15  entry of guilty pleas pursuant to this agreement.

16

17                                            DECEMBER 13, 2018

18  JONATHAN R. BARR                    Date

     THOMAS D. WARREN

     Attorneys for Defendant

19  WILEY SANDERS TRUCK LINES INC.

20

21

22

23

24

25

26

27

28

EXHIBIT A

**Exhibit A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 18- |
| Plaintiff, | I N F O R M A T I O N |
| v. | [49 U.S.C. § 5124(a), 49 C.F.R. § 173.24(b): Illegal Transportation of Hazardous Materials; 18 U.S.C. § 2(b): Causing an Act to be Done] |
| WILEY SANDERS TRUCK LINES INC., | |
| Defendant. | |

The United States Attorney charges:

COUNT ONE

[49 U.S.C. § 5124(a), 49 C.F.R. § 173.24(b); 18 U.S.C. § 2(b)]

On or about August 10, 2013, in Los Angeles County, within the Central District of California, and elsewhere, employees of defendant WILEY SANDERS TRUCK LINES INC. willfully and recklessly transported, and willfully caused to be transported, hazardous materials, namely, 41,720 pounds of lead-contaminated plastic chips generated by Company 1, a battery recycling facility located in Vernon, California, in a semi-truck trailer without authorized packaging in violation of Title 49, Code of Federal Regulations, Section 173.24(b).

COUNT TWO

[49 U.S.C. § 5124(a), 49 C.F.R. § 173.24(b); 18 U.S.C. § 2(b)]

On or about November 1, 2013, in Los Angeles County, within the Central District of California, and elsewhere, employees of defendant WILEY SANDERS TRUCK LINES INC. willfully and recklessly transported, and willfully caused to be transported, hazardous materials, namely, 45,680 pounds of lead-contaminated plastic chips generated by Company 1, a battery recycling facility located in Vernon, California, in a semi-truck trailer without authorized packaging in violation of Title 49, Code of Federal Regulations, Section 173.24(b).

2

1

COUNT THREE

2

[49 U.S.C. § 5124(a), 49 C.F.R. § 173.24(b); 18 U.S.C. § 2(b)]

3    On or about March 13, 2014, in Los Angeles County, within the

4    Central District of California, and elsewhere, employees of defendant

5    WILEY SANDERS TRUCK LINES INC. willfully and recklessly transported,

6    and willfully caused to be transported, hazardous materials, namely,

7    41,440 pounds of lead-contaminated plastic chips generated by Company

8    1, a battery recycling facility located in Vernon, California, in a

9    semi-truck trailer without authorized packaging in violation of Title

10   49, Code of Federal Regulations, Section 173.24(b).

11                                        NICOLA T. HANNA
                                          United States Attorney

12

13

14                                        LAWRENCE S. MIDDLETON
                                          Assistant United States Attorney
15                                        Chief, Criminal Division

16                                        JOSEPH O. JOHNS
                                          Assistant United States Attorney
17                                        Chief, Environmental and Community
                                          Safety Crimes Section
18
                                          MARK A. WILLIAMS
19                                        Assistant United States Attorney
                                          Deputy Chief, Environmental and
20                                        Community Safety Crimes Section

21

22

23

24

25

26

27

28

3

# EXHIBIT B

1

**Exhibit B**

2

**Statement of Facts**

3 **A.    Company 1's Battery Recycling Facility**

4        Company 1 operated a large battery recycling facility ("the

5 Facility") on a 15-acre property in Vernon, California.   The

6 Facility received and recycled lead-acid batteries into their basic,

7 constituent parts -- lead and plastic.   At peak operation the

8 Facility received approximately 40,000 batteries per day.   The

9 batteries were initially crushed and broken apart in a hammer mill,

10 and during this process the batteries were separated into three

11 primary component streams: acid, lead, and plastic.   The acid was

12 neutralized and treated on-site.   The lead was reprocessed and

13 smelted to produce a lead product that could be reused to

14 manufacture new lead-acid batteries.   The plastic was rinsed, loaded

15 into semi-truck trailers, and transported to an off-site facility

16 for reprocessing into new, resin-coated plastic pellets that could

17 be used to manufacture new lead-acid batteries and other consumer

18 products.

19        As part of the battery recycling process, the Facility

20 generated various hazardous wastes including corrosive fluids and

21 waste containing metals such as lead, cadmium, arsenic, antimony,

22 zinc, and chromium.   Lead is a soft, heavy metal that enters the

23 body by two paths: inhalation or ingestion.   Children under the age

24 of six are known to ingest more lead than adults because of the

25 normal hand-to-mouth behavior of young children.   The most common

26 manner by which children ingest lead is by placing objects that have

27 lead-contaminated soil or dust on them in their mouths.   There is no

28 known safe level of lead in human blood.   During the early 1990's,

1

1  the United States Centers for Disease Control and Prevention

2  determined that nearly 1,000,000 children within the United States

3  had levels of lead in their blood stream high enough to cause

4  irreversible damage to their health.

5  **B.    Defendant's Transportation of Lead-Contaminated Plastic Chips**

6          Defendant WILEY SANDERS TRUCK LINES INC. ("defendant") is a

7  corporation engaged in the trucking business in California, within

8  the Central District of California, and in 47 other states.

9  Defendant is registered as a hazardous waste transporter with the

10 California Department of Toxic Substances Control ("DTSC"), and a

11 portion of defendant's business involves the transportation of

12 hazardous wastes and hazardous materials in semi-truck trailers

13 (i.e., a three-axle semi-truck pulling a tandem-axle semi-trailer).

14         Defendant used its semi-truck trailers to transport plastic

15 chips from the Facility to Company 2, a business in Bakersfield,

16 California, where the chips were made into battery cases, glove box

17 liners, nursery trays for plants, and other products.  The process

18 was relatively straightforward.  After the Facility separated the

19 plastic chips from the rest of the battery components, the plastic

20 chips were rinsed with water in an attempt to remove the lead and

21 other materials, and then loaded into defendant's semi-trailers that

22 were parked at the Facility.  Defendant knew that the semi-trailers,

23 however, did not contain any lining or inner packaging material to

24 prevent liquids and semi-solids from escaping through cracks and

25 other openings in the trailers.  As such, defendant's truck drivers

26 would occasionally transport the semi-trailers on public roads

27 before the plastic chips were dry, despite the fact that the lead-

28

2

1   contaminated plastic chips and resulting lead-contaminated liquid
2   residue would leak out of the trailers.

3       The Facility would also prepare a bill of lading and a uniform
4   hazardous waste manifest for the loads of plastic chips describing
5   the material as "Hazardous Waste Solid."  Defendant would transport
6   the hazardous waste to Company 2 where the plastic would be made
7   into different products.  Defendant's semi-truck trailers would
8   typically transport approximately 40,000 pounds of lead-contaminated
9   plastic chips at a time, multiple times per week, from the Facility
10  to Company 2.  At all relevant times, defendant knew that it was
11  transporting hazardous waste and hazardous material in semi-truck
12  trailers that were not leak proof or sift proof.

13      On or about August 10, 2013, one of defendant's semi-truck
14  trailers that was transporting plastic battery chips from the
15  Facility entered the Castaic Weigh Station located on the northbound
16  Interstate 5 highway near Santa Clarita, California.  The semi-truck
17  trailer was stopped at the weigh station because of a faulty running
18  light.  A California Highway Patrol officer working at the weigh
19  station noticed that the semi-trailer was leaking liquid onto the
20  ground.  Because the shipment was being transported under a
21  hazardous waste manifest, the Los Angeles County Fire Department
22  Health Hazardous Materials Division ("HHMD") was notified.  HHMD
23  responded and collected samples from the trailer and the liquid that
24  was dripping from it.  Two samples of the dripping liquid collected
25  from the outside of the trailer were tested and found to contain
26  11.3 milligrams per liter ("mg/L") and 5.56 mg/L of lead,
27  respectively.  Waste that contains more than 5.0 mg/L of lead was a
28  toxic hazardous waste under the federal Resource Conservation and

Recovery Act ("RCRA") and also a hazardous material under the
Hazardous Materials Transportation Act ("HMTA").  This trailer
contained approximately 41,720 pounds of lead-contaminated plastic
battery chips.

On or about November 1, 2013, another semi-truck trailer owned
and operated by defendant entered the Castaic Weigh Station.  The
truck driver was asked to open one of the doors in the back of the
semi-trailer so that the trailer's contents could be inspected, and
when he did so plastic battery chips spilled out of the trailer.  A
large quantity of plastic battery chips was piled loosely inside the
trailer.  When a DTSC senior environmental scientist looked
underneath the trailer, he saw a yellow/brown residue that had
crystallized and was stuck to the trailer's chassis.  In some areas,
the yellow/brown crystallized material was growing downward similar
to how stalactites form on the roof of a cave.  Samples were taken
of the plastic chips that were located inside the trailer and of the
yellow/brown crystallized material on the trailer's chassis.  The
plastic chip sample was tested and found to contain 5.6 mg/L of
lead, and the yellow/brown material was tested and found to contain
120 mg/L of lead.  As such, both samples were toxic hazardous wastes
under RCRA and hazardous materials under the HMTA.  This trailer
contained approximately 45,680 pounds of lead-contaminated plastic
battery chips.

In addition, on or about March 13, 2014, defendant transported
a load of 41,440 pounds of lead-contaminated plastic battery chips
from Vernon, California, to Bakersfield, California, in a semi-truck
trailer without authorized packaging.

4